202 So.2d 887 (1967)
John J. MIRRAS, Appellant,
v.
Diana Lee MIRRAS, Appellee.
No. 7444.
District Court of Appeal of Florida, Second District.
September 27, 1967.
*889 Sanders, McEwan, Schwarz & Mims, Orlando, for appellant.
Gray, Simonet & Hutchinson, Orlando, for appellee.
HODGES, JOHN G., Associate Judge.
This is an appeal by the appellant, defendant below, from a final decree which granted to the appellee, the plaintiff below, a divorce and awarded to her custody of the minor child of the parties.
From the time of their marriage in Rochester, New York, on March 4, 1962, the parties had resided in the State of New York until October 12, 1964, when the plaintiff-wife, unhappy and disillusioned, departed from the marital domicile and returned to her native state and birthplace at Orlando, Florida, to reside with her mother.
In November 1964 the defendant-husband filed a suit for divorce in New York, alleging that the plaintiff was guilty of adultery. The plaintiff answered through counsel but defaulted at final hearing on October 18, 1965, and an interlocutory decree, which would automatically become final after three months, was entered, awarding a divorce and custody of the minor son to the defendant. The decree entered by the Supreme Court of the State of New York contained the following language:
"* * * divorcing the parties on the ground of the defendant's adultery and permitting the plaintiff to remarry but forbidding the defendant to remarry any other person during the lifetime of the plaintiff except with the permission of the court * * *." (italics ours)
Meanwhile, the plaintiff had filed, on July 7, 1965, in the Circuit Court for Lake County, Florida, the complaint in the instant proceeding. The defendant-husband was served by publication and entered a special appearance by his attorney, wherein he sought to abate the action because of the pending suit in New York. The motion was denied, the defendant then answered and the cause came on for final hearing before the Florida Chancellor on January 7, 1966. After completion of testimony, the plaintiff moved, on January 28, 1966, for leave to amend her complaint to allege, as an additional ground for divorce, the granting of the divorce to the defendant by the New York court. Leave to amend was granted and the Court, presumably after studious inquiry, research and judicial reflection, approximately eight months later, on September 8, 1966, entered the final decree which is the subject of this judicial review.
*890 The principal points of inquiry posed for re-examination by us are not new in Florida. Nor are we writing upon a clean slate inasmuch as there have been many apposite, painstaking and articulate decisions placed upon the record by our appellate courts. Realizing that in retracing former tracks we also run the risk of smearing and obscuring, nevertheless it may be helpful to apply to the facts in the instant case the rules enunciated in previous pronouncements in an attempt to further mold and refine their scope and distinction.
The first question facing us is:
DOES A DECREE OF DIVORCE IN NEW YORK PROHIBITING ONE OF THE PARTIES TO REMARRY WITHOUT ORDER OF THE NEW YORK COURT ENTITLE SUCH PARTY TO OBTAIN A DIVORCE IN THE STATE OF FLORIDA BASED UPON THE NEW YORK DIVORCE IN FAVOR OF THE OTHER PARTY?
In approaching a resolution of the point involved in this question, we note that appellant and appellee were within the jurisdiction of the New York court and that its decree as to this aspect of the case is entitled to full faith and credit under the Federal Constitution. We also observe, however, that the foreign decree was subject to modification and was incomplete as to the appellee who, unlike the appellant, was not granted a complete divorce in that she was not permitted to remarry.
Section 65.04, Florida Statutes, F.S.A., entitled "Grounds for divorce", provides as follows:
"No divorce shall be granted unless one of the following facts shall appear: * * * (8) That the defendant has obtained a divorce from the complainant in any other state or country." (Italics ours)
While the full faith and credit clause forbids relitigation by the Florida courts of a decree of divorce by a sister state (See Keener v. Keener, 152 Fla. 13, 11 So.2d 180), the foreign decree is entitled only to the finality to which it is entitled in the state where rendered. (People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610)
In the Keener case the Supreme Court clearly and incisively proclaimed the scope of Section 65.04(8), Florida Statutes, F.S.A., in this crisp language:
"A literal interpretation might require a pronouncement to the effect that when an absolute divorce is granted to a complainant in another state and the defendant in that case becomes the complainant in a divorce suit brought in this state against the complainant in the former suit, the complainant here would be entitled to prevail.
"We do not think such an interpretation comports with reason and justice. It would sanction the relitigation of divorce proceedings long settled by final decrees of courts of competent jurisdiction; it would permit one to be harassed for suit money in more than one state; there would be no end to divorce litigation; and the full faith and credit clause of the Federal Constitution, Section One, Article Four, Constitution of the United States, would for that case be set at naught.
"If the foreign divorce is valid in the state where secured, it will be recognized under the full faith and credit provision of the Federal Constitution and may not be basis for divorce in this state. If on the other hand jurisdiction of the defendant was not acquired or the divorce is not effective as to both parties or is for other reasons invalid, then a complainant here would not be bound by it and would be in position to invoke the provisions of the statute in question to be relieved from it." (Emphasis added)
*891 This language was adopted and confirmed by the Third District Court of Appeal, in Choucherie v. Choucherie, 120 So.2d 821, which also distinctly said:
"It may be presumed that the purpose of the statute is to protect Florida residents from the unhappy situation of being divorced in other states and not divorced in their own state."
A decision (Pawley v. Pawley, Fla., 46 So.2d 464) specifically upholding, under comity, a husband's Cuban divorce decree, in an action for alimony unconnected with divorce, under Section 65.10, Florida Statutes, F.S.A., prior to its 1965 amendment, recognized that the Cuban decree did not destroy all of the husband's marital obligations and could not bar an action by the wife under Section 65.04(8), Florida Statutes, F.S.A. The judicial recognition was predicated upon the fact that a divorce, while dissolving the marital status, may not extinguish all obligations incidental to it. The same recognition was made by the appellate court in Coppersmith v. Coppersmith, 127 So.2d 711, where it was held that an Ohio decree dissolved the marriage but did not bar the plaintiff's right to alimony and as such would not preclude a proper action under the statutory provision involved.
The language contained in the New York decree in our case dissolved the marriage but limited the right of the plaintiff to remarry. Such a divorce is not permitted under Florida law. (Section 65.03, Florida Statutes, F.S.A.; Hieber v. Hieber, Fla.App., 151 So.2d 646; Greenberg v. Greenberg, Fla.App., 101 So.2d 608)
The facts in the case under review are close enough to those in Givens v. Givens, 121 Fla. 270, 163 So. 574, to place the two cases almost directly in point. In the Givens case, the Virginia court allowed the wife a divorce from bed and board and custody of the children. The husband then brought suit in Florida for divorce under Section 65.04(8), Florida Statutes, F.S.A., alleging the Virginia divorce to the wife. Our Supreme Court, in addition to stating that the final decree was entitled to full faith and credit, held that it constituted sufficient grounds for divorce by the husband in Florida under the statute. The effect of the Virginia decree under the Virginia law was, as to both parties, the same as the effect of the New York decree in the present case is as to the appellee.
The granting by the lower court of an absolute divorce to the appellee on the statutory ground was, therefore, proper and followed the intent of the statute to free the wife from a limited divorce under the foreign decree.
The second question raised for our consideration is:
DOES THE NEW YORK COURT HAVE JURISDICTION TO AWARD CUSTODY OF A MINOR CHILD WHEN SAID MINOR CHILD IS PHYSICALLY OUTSIDE THE STATE OF NEW YORK DURING THE ENTIRE PROCEEDING, AND IF SO, MAY THE FLORIDA COURT DISREGARD SUCH CUSTODY AWARD OF THE NEW YORK COURT BASED ON NEW FACTS OR OLD FACTS NOT AVAILABLE TO THE NEW YORK COURT AT THE TIME OF ENTRY OF ITS ORDER?
This question, we think, has been clearly resolved by several decisions of our appellate courts, including the Supreme Court, although some confusion appears to have crept into its consideration because of a misconstruction of the rule enunciated by the First District Court of Appeal in the case of Rhoades v. Bhon, 114 So.2d 493, which was confirmed by the Florida Supreme Court as reported in 121 So.2d 777. The rule, also pronounced and applied in Lambertson v. Williams, Fla., 61 So.2d 478; In Re Vermeulen's Petition, Fla.App., 114 So.2d 192; and Neal v. State, Fla.App., 135 So.2d 891, as stated *892 by the First District and quoted by the Supreme Court, is as follows:
"* * * once a court acquires jurisdiction of a minor as an ancillary phase of a divorce proceeding and enters an order or decree touching its custody, that court has continuing jurisdiction, upon proper supplementary proceedings, to amend such order or decree by changing the custody of the minor as may comport with its best interest and welfare. Such jurisdiction will not depend upon the contingency of whether the minor is physically present within the court's territorial jurisdiction, provided its custodian is properly served with notice of the proceedings in accordance with law and is afforded an opportunity to appear and be heard on the custody issue. * * *" (emphasis added)
The rule clearly applies only to supplemental proceedings as were involved in each of the cases cited. It does not apply to an initial proceeding dealing with custody of a child. In the case before us the divorce proceeding in New York was an initial proceeding instituted without the presence of the child within the jurisdiction of the Court. Therefore, the Court never acquired jurisdiction and could not have continuing jurisdiction for further proceedings.
The same question was presented in Smith v. Davis, Fla.App., 147 So.2d 177, wherein the Rhoades decision was specifically clarified in a situation somewhat like the present one. In the Smith case a Florida court entered an order of custody in favor of the mother, based on personal service on the father, with the child residing in Dublin, Georgia. The First District Court of Appeal held that the Florida court had no jurisdiction under the circumstances to render a custody award in view of the fact that the minor was not present within the territorial jurisdiction of the Court, stating:
"It has long been the law of this state that courts have no jurisdiction to initially adjudicate the custody of a minor child unless such child is physically present within the territorial jurisdiction of the court at the time suit seeking an adjudication of its custody is filed. This rule prevails even though personal service of process is had upon the defendant who has custody of the child in a foreign jurisdiction." (Italics ours)
The Court then distinguished the Rhoades case as one not involving an initial adjudication of custody but as a supplemental proceeding brought for the purpose of modifying a prior custody order, and thereupon declared:
"The rule of law pronounced in Rhoades applies only to supplemental proceedings brought for the purpose of modifying a prior order or decree relating to the custody of minors. The decision in no manner disturbs or modifies the basic requirement that in order for a court to acquire jurisdiction of a proceeding to initially adjudicate the custody of a minor, the child must be physically present within the territorial jurisdiction of that court at the time the proceeding is instituted." (Italics ours)
So, the New York court in the present case did not have jurisdiction of the child and was powerless to effectively award custody to the appellant. But even assuming jurisdiction in the court of the sister state to act, the Florida court was not required to recognize the foreign decree affecting custody of the minor child under the full faith and credit clause of the United States Constitution, because the full faith and credit clause is applicable only to final judgments or decrees. A decree awarding custody of a minor is universally subject to modification from time to time as the interest of the minor may require (See In Re Vermeulen's Petition, supra). And, even though a decree touching custody of minors of the *893 foreign court having jurisdiction is entitled to great weight under the doctrine of comity, that tenet is discretionary with the Court and depends, for its consideration, upon the foreign court having had jurisdiction and having properly litigated the matter before it.
The decree of the Supreme Court of New York regarding custody of the minor child involved is entitled, then, to no weight in this case inasmuch as the decree was issued without jurisdiction. The Florida court, in exercising sound discretion, could likewise have given it no weight under the doctrine of comity, in any eventuality, because of the absence of relevant facts bearing upon the best interest and welfare of the child before the New York court at the time of its decree. Nor was any evidence considered with reference to the appellee's qualifications for custody of the child. As held in Gilman v. Morgan, 158 Fla. 605, 29 So.2d 372:
The question of the best interest of the child not having been litigated in a truly adversary manner in the foreign state, its decree would not be recognized or given effect by the Florida court.
The issue of custody of the minor child of the parties was not truly litigated in New York in the instant case.
For the foregoing reasons, the Chancellor's determination of the custody question was clearly proper, regardless of the New York decree.
Two other subordinate questions; i.e., whether the Chancellor abused his discretion in awarding custody of the minor child to the plaintiff and whether or not the evidence was sufficient to support the entry of a decree of divorce in favor of the plaintiff on the ground of extreme cruelty, are easily answered, because the trial court's findings are entitled to every presumption of correctness and the testimony adduced in the case must be viewed in the light most favorable to the appellee. (2 Fla.Jur. 671, 675)
On appeal, the Appellate Court must not only view the evidence in the light most persuasive to the position of the appellee or the party who prevailed in the lower court but he, as the prevailing party, is entitled to the benefit of all reasonable inferences that can be drawn from the evidence viewed in the light most propitious to him. The Appellate Court is limited to a review of the law and, so long as there is sufficient evidence to sustain a finding of fact, must not substitute its judgment for the judgment of the trial court in this regard. The weight of the evidence and credibility of the witnesses are questions for the trial court, which is in a better position to make the requisite assessments involved in the questions.
There is ample evidence in the record to sustain the trial court's finding of extreme cruelty on the part of the appellant and the granting of a divorce on such grounds. Moreover, the transcript is rather replete with testimony of various persons of unchallenged character to the effect that the appellee is of good moral character and an excellent mother to her child. There is nothing in the record to indicate that the able Chancellor abused his discretion in awarding custody of the minor child to the plaintiff-appellee.
It clearly appears to us that the Chancellor's decisions on the questions propounded were the only ones consistent with the law and the evidence and should be affirmed in every respect.
Affirmed.
ALLEN, Acting C.J., and HOBSON, J., concur.